UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE LANCE and MICHAEL RIVERA,

                  Plaintiffs,               Case No. 08-13829

v.                                      Hon. Victoria A. Roberts

FORD MOTOR COMPANY and
VISTEON CORPORATION,

                  Defendants.

_____/

### ORDER GRANTING DEFENDANT VISTEON'S MOTION TO DISMISS

**I.      INTRODUCTION**

This matter is before the Court on Defendant Visteon Corporation's Motion to

Dismiss [Doc. 16].  The matter has been fully briefed.  Defendant's Motion is

**GRANTED**.

**II.     BACKGROUND**

Plaintiffs Denise Lance and Michael Rivera bring this action against Defendants

Ford Motor Company ("Ford") and Visteon Corporation ("Visteon).  They allege that

Ford and Visteon engaged in a complex benefits avoidance scheme, in violation of

Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. §§1101, *et seq.*

Ford is an automotive manufacturer. Visteon is an automotive parts manufacturer

which was a wholly-owned subsidiary of Ford until June 28, 2000, when Ford distributed

its entire interest in Visteon to Ford shareholders ("the spin-off").  Ford did not retain

equity in Visteon; Visteon became an independent, publicly traded corporation.  Ford

says the divestiture was mutually beneficial – it allowed Visteon to expand its client base

beyond Ford and allowed Ford to acquire parts from third-party suppliers.

Plaintiffs, along with certain other salaried Ford employees, transferred to

Visteon as a result of the spin-off and became Visteon employees.  The transfer was

mandatory and affected employees could not choose to remain at Ford.  Their Ford

employment was terminated as of the transfer date.  Plaintiffs say that authorized

agents of Ford and Visteon made oral and written assurances that their wages, salary,

health care, and pension entitlements would be "safeguarded" and their retirement

benefits would be approximately the same.

During their Ford employment, Plaintiffs participated in Ford's Group Retirement

Plan ("GRP").  The GRP is a traditional, defined benefit pension plan that pays fixed

monthly or lump sum retirement pension amounts to eligible Ford employees.  The GRP

provides a variety of pension benefits, including regular and early retirement pensions

and certain supplemental pension allowances.

Prior to the spin-off, Ford and Visteon executed an Employee Transition

Agreement ("ETA"), which governed the transfer of Ford salaried employees to Visteon.

One stated purpose of the ETA was to facilitate the "orderly transition of benefit plans."

The ETA categorized Ford salaried employees into Groups I, II and III.  Plaintiffs fell into

Group III, which is the only group at issue.  Group III included employees who

participated in the GRP, but were not Group I or II employees.

Under the ETA, Visteon was required to establish its own defined benefit plan --

2

the Visteon Mirror Group Retirement Plan ("VMGRP").   As it pertained to Group III employees, the VMGRP contained provisions that duplicated the benefit provisions of the GRP.  Their pension benefits earned as participants in the GRP, prior to the spin-off, were transferred to the VMGRP; the VMGRP was to provide retirement benefits for service recognized under the GRP prior to the benefit transition date of June 1, 2000 and for service with Visteon after that date.  Ford transferred cash assets of $49 million to Visteon, an amount equal to projected benefit obligations for Group III employees on the transfer date.

In October 2005, Ford agreed to re-acquire 23 of Visteon's North American plants, including the Sterling Heights and Rawsonville plants where Plaintiffs worked. **(NOTE:  Plaintiffs allege in this Complaint at ¶ 33 that 23 plants were transferred. In *Ensley*, (companion case no.: 06-12845) Plaintiffs' Brief in Response (Doc. #63) at p. 12-13 and an exhibit #4 said there were 24 plants transferred.)**  Visteon transferred those 23 facilities to a Ford managed entity called Automotive Components Holdings, LLC ("ACH").  Plaintiffs tried to transfer to open positions with ACH, which would have allowed them to continue their Visteon employment and participation in the VMGRP, but were told they could not do so. Beginning in January 2006, Plaintiffs and other salaried employees at the affected Visteon plants were involuntarily transferred to Ford; they were terminated by Visteon and hired (or, in the case of Plaintiffs, re-hired) by Ford.

Ford and Visteon entered into another agreement to facilitate the transfer of employees to Ford after the re-acquisition--the Visteon Salaried Employee Transition

3

Agreement ("VSETA").  Pursuant to the VSETA, the Visteon transferees were treated as re-hires for pension eligibility purposes.  The VSETA provided that the transferees were excluded from full participation in the GRP and eligible only to participate in the newly created Ford defined benefit plan ("FRP").  *See* VSETA attached to Amended Complaint as Exh. 2.  Visteon retained $49 million in funds identified in Securities and Exchange Commission ("SEC") filings as pension relief.

Plaintiffs' Complaint alleges one claim – Violation of ERISA § 510.  Plaintiffs say that Ford and Visteon, acting as alter egos, orchestrated the spin-off and re-acquisition as a corporate scheme to allow Ford to avoid paying full retirement benefits to salaried workers.  Plaintiffs allege that Ford and Visteon violated § 510 by: (1) forcing them to transfer to Ford; (2) classifying them as "new hires" rather than transferees; and (3) wrongfully retaining funds that rightfully belonged to Plaintiffs as part of their protected ERISA benefits.

To redress the alleged violation of § 510, Plaintiffs request: (1) a declaration that Ford and Visteon violated their rights under § 510; (2) equitable injunctive relief in the form of reinstatement to the GRP, the VMGRP and any other ERISA-protected benefit and severance plan for all purposes and/or credit with service years under those plans as if the unlawful interference had not occurred; (3) equitable restitutionary relief in the form of retirement benefits, service credits or monetary compensation to make them whole; and (4) any equitable relief the Court deems necessary to restore their benefits and enforce their ERISA rights.

Visteon contends the Complaint on its face makes clear that Plaintiffs are not entitled to relief from Visteon under ERISA.

4

III.    **STANDARD OF REVIEW**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6), where a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff's allegations plausibly establish a case which would entitle the plaintiff to relief.  *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1968-70 (2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Id.* at 1965. *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any attached exhibits, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. See *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). "[T]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim."  *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).  "A judge may not grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).

IV.    **ANALYSIS**

    **A. Plaintiffs May Proceed Under the Alter Ego Doctrine**

Plaintiffs say Visteon and Ford are alter egos.  Visteon does not address the

issue.  Although the matter has not been addressed by the Sixth Circuit or other

jurisdictions in the context presented, it appears that Plaintiffs may proceed under the

alter ego doctrine to establish liability in this case.

Courts in the Sixth Circuit and other jurisdictions allow plaintiffs to proceed under

the alter ego theory in myriad other contexts under ERISA, including:  to determine

liability for vested health benefits, to determine liability for vested/accrued benefit or

pension fund contributions, and to assess liability against non-fiduciaries who assisted

in a breach of fiduciary duty. See *Yolton v. El Paso Tennessee Pipeline Co.,* 435 F.3d

571 (6th Cir. 2006), *cert. den.,* 126 S.Ct. 555 (2006); *Laborers' Pension Trust Fund v.*

*Sidney Weinberger Homes, Inc.,* 872 F.2d 702 (6th Cir. 1988); *Central States, Southeast*

*and Southwest Areas Pension Fund v. Sloan*, 902 F.2d 593 (7th Cir. 1990); *Chicago*

*District Council of Carpenters Pension Fund v. PMQT, Inc.,* 169 F.R.D. 336 (N.D. Ill.

1996); *Massachusetts Carpenters Central Collection Agency v. Belmont Concrete*

*Corp.,* 139 F.3d 304 (1st Cir. 1998); *Lowen v. Tower Asset Management, Inc.,* 829 F.2d

1209 (2nd Cir. 1987).

As observed by the Sixth Circuit, "[a] contention that A is B's 'alter ego' asserts

that A and B are the same entity; liability then is not vicarious but direct." *UAW v.*

*Aguirre*, 410 F.3d 297, 301 (6th Cir. 2005) (citing *Ellis v. All Steel Constr., Inc.*, 389 F.3d

1031, 1034 (10th Cir. 2004)).  In the labor law context, the alter ego doctrine of direct

liability typically applies in 'disguised continuance' cases to bind a new employer that

6

continues the operations of an old employer in those cases where the new employer is merely a disguised continuance of the old employer." *Id.* (internal quotations and citation omitted).

The Sixth Circuit further observed that the alter ego doctrine "also applies in so-called double-breasted operations to determine whether two or more coexisting employers performing the same work are in fact one business, separated only in form." *Id.* (internal quotations and citation omitted). The same test is applied in both the "disguised continuance" and "double-breasted operation" contexts to determine whether A is B's alter ego. *Id.* That test requires the Court to determine "whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership." *Id.* (internal quotations and citation omitted). Accord *Yolton*, 435 F.3d at 588..

Plaintiffs allege that at all relevant times, Visteon was an instrumentality of Ford and was operated as its alter-ego and a business unit of Ford even after the spin-off. Amend. Comp. at ¶ 45. They say Ford: (1) exercised dominion and control over Visteon's senior management and directors and was a joint employer of Visteon's workforce; (2) assumed responsibility for Visteon's debts and losses; (3) manipulated its contracts with Visteon to maximize Ford's revenue and profits, thereby adversely affecting Visteon's profitability; and (4) demonstrated a unity of interest and ownership since Visteon's inception, including a shared inter-company computer system and leased employees. Amend. Comp. at ¶ 45.

The Court accepts these allegations as true, and finds them sufficient for Plaintiffs to proceed under an alter ego theory of liability.

7

**B.    Plaintiff's Are Not Entitled to Relief for Interference with Benefits under the VMGRP**

**1.  Monetary Compensation**

Violations of ERISA  § 510 are not independently actionable, but rather must be brought under § 502(a)(3) of ERISA's civil enforcement scheme.  Under § 502(a)(3), a plan participant or beneficiary can institute a proceeding "(A) to enjoin any act or practice which violates [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan."  29 U.S.C. § 1132(a)(3).

Visteon argues that money damages and other non-equitable relief are prohibited under ERISA § 502(a)(3).  Thus, Visteon says, to the extent that Plaintiffs seek monetary relief to compensate them or otherwise make them whole for benefits they could not accrue under the VMGRP because of their Ford re-employment, such relief is legal rather than equitable, and unavailable under § 502(a)(3).  Visteon says the Sixth Circuit Court of Appeals recently clarified in *Alexander v. Bosch Auto. Sys.*, 232 Fed. Appx. 491 (6th Cir. 2007), an unpublished case, that such monetary relief cannot be awarded under ERISA.

In *Alexander*, defendant employer appealed a district court judgment in favor of 36 employees on their claim of unlawful interference under § 510.  The employees alleged that the employer intentionally timed their layoffs and a plant closing to deprive them of plant closure benefits.  After finding the employer liable on that claim, the district court ordered the employer to "instate" them to a list of employees eligible to receive

8

plant closure benefits under a collective bargaining agreement.

On appeal, the employer conceded liability but argued for reversal on grounds that the remedy was not "appropriate equitable relief" as permitted under § 502(a)(3). The Sixth Circuit agreed and vacated the district court judgment, even though it left the employees without a remedy.  *Alexander*, 232 Fed. Appx. at 502.  The court reasoned that the remedy ordered by the district court was akin to contractual reformation rather than reinstatement, and reformation was inappropriate because there was no allegation the parties had an agreement that was improperly reduced to writing. *Id.*, at 498-499. Likewise, equitable restitution was unavailable since the employees did not seek specifically identifiable funds, but rather sought to impose personal liability on the employer by recovering from its general assets. *Id.*, at 501.

Visteon says the facts alleged in Plaintiffs' Complaint preclude recovery under a restitution theory because Plaintiffs seek compensatory damages for benefits they did not earn, for a period in which they provided no Visteon service.  Additionally, Visteon denies that Plaintiffs identify any "particular funds" in Visteon's possession to which they can properly lay claim for restitution.

Visteon says the vague allegations in the Complaint regarding "pension relief" received by Visteon upon Ford's reacquisition of the Sterling and Rawsonville plants are insufficient to state a claim for the following reasons: (1) any such funds are in the possession of the VMGRP, which is not a party to this case and cannot be ordered to provide relief; (2) Plaintiffs have not shown that the VMGRP holds any Ford funds meant for future benefit accruals, and they admit that any transfer of assets was designed to "cover the outstanding pension obligations for Group 3 employees;" (3)

9

even if such funds existed, Plaintiffs have no right, interest or claim to any particular asset that composes part of the plan's general asset pool; (4) transfer of such funds, assuming they existed, would not be equitable restitution because Plaintiffs did not earn them; and (5) transfer of funds to the GRP is inappropriate for interference with VMGRP benefits.

Plaintiffs deny that *Alexander* announces a blanket rule that monetary relief to make plaintiffs whole cannot be awarded under ERISA. They attempt to distinguish *Alexander* because those plaintiffs did not allege they were re-classified or otherwise suffered an adjustment in employment status, and they were seeking to recover the "value" of the plant closing benefits. Plaintiffs say they, on the other hand, both allege that their employment status was changed in order to interfere with their pension rights, and they seek particular and traceable pension funds which remain in Visteon's possession.

The Court finds *Alexander* to be on point. Plaintiffs essentially ask the Court to modify the terms of the VMGRP to provide eligibility and compensation for time periods in which they were not Visteon employees and not active members of the plan. There is no allegation in the Complaint, nor any indication in the plan documents that this was an intended result.

It is also questionable whether the funds which Plaintiffs seek are particular and traceable. Plaintiffs cite to a Detroit Free Press article, Jason Roberson, "Visteon Reports Profit in Quarter," August 2, 2006, as support for their claim that Visteon retained funds identified in SEC filings as pension relief. Plaintiffs highlight that the article reports that Visteon "gained $49 million by not having to pay for post-employment

10

benefits for salaried employees who transferred back to Ford." Their Brief says these assets were transferred to Visteon by Ford "specifically to cover the outstanding pension obligations for Group 3 employees." As Visteon notes, this seems to be an admission that any transfer of assets to the VMGRP was for benefits previously earned, not for future accruals.

The Supreme Court clarified the scope of remedial power conferred on district courts by § 502(a)(3). In *Mertens v. Hewitt Associates*, 508 U.S. 248, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993), the Court construed § 502(a)(3) to authorize only "those categories of relief that were typically available in equity," and thus rejected a claim that the Court construed as seeking "nothing other than compensatory damages." *Id.*, at 256, 255, 113 S. Ct. 2063, 124 L. Ed. 2d 161.

The Supreme Court elaborated on this construction of § 502(a)(3)(B) in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002). The plan in *Knudson* reserved "'a first lien upon any recovery, whether by settlement, judgment or otherwise,' that the beneficiary receives from [a] third party." *Id.*, at 207, 122 S. Ct. 708, 151 L. Ed. 2d 635. After Knudson was involved in a car accident, Great-West paid medical bills on her behalf and, when she recovered in tort from a third party for her injuries, Great-West sought to collect from her for the medical bills it had paid. *Id.*, at 207-209, 122 S. Ct. 708, 151 L. Ed. 2d 635.

In response to the argument that Great-West's claim in *Knudson* was for "restitution" and thus equitable under § 502(a)(3)(B) and *Mertens*, the Court noted that "not all relief falling under the rubric of restitution [was] available in equity." 534 U.S. at 212, 122 S. Ct. 708, 151 L. Ed. 2d 635. The Court explained that one feature of

11

equitable restitution was that it sought to impose a constructive trust or equitable lien on "particular funds or property in the defendant's possession." *Id.*, at 213, 122 S. Ct. 708, 151 L. Ed. 2d 635.   That requirement was not met in Knudson, because "the funds to which petitioners claim[ed] an entitlement" were not in Knudson's possession, but had instead been placed in a "Special Needs Trust" under California law. *Id.*, at 214, 207, 122 S. Ct. 708, 151 L. Ed. 2d 635.

The kind of relief Great-West sought, therefore, was "not equitable – the imposition of a constructive trust or equitable lien on particular property--but legal--the imposition of personal liability for the benefits that [Great-West] conferred upon [Knudson]." *Id.*, at 214, 122 S. Ct. 708, 151 L. Ed. 2d 635.   The Court accordingly determined that the suit could not proceed under § 502(a)(3). *Ibid.*

The *Mertens* and *Knudson* line of cases demonstrates that suits seeking to compel the defendant to pay a sum of money to the plaintiff are "almost invariably" excluded from the category of suits seeking relief typically available in equity, according to the Supreme Court.

Nonetheless, Plaintiffs argue that a remedy cannot be classified as legal merely because it consists of money payments.  Plaintiffs suggest that the decisions in the *Mertens* and *Knudson* line of cases are wrong.  Citing to Professor John Langbein's, "What ERISA Means By 'Equitable': The Supreme Court's Trail of Error in Russell, Mertens, and Great West,"103 Colum. L. Rev. 1317 (Oct. 2003), they say a proper reading of ERISA requires a conclusion that the statute empowers federal courts to fashion appropriate equitable relief based on the circumstances of each case. Additionally, they say the *Mertens* line of holdings did not involve interference claims

12

under § 510, and thus do not bar recovery.

Plaintiffs cite the dissenting opinion in *Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1265 (10th Cir. 2004) for the proposition that where the aggrieved party shows entitlement to equitable relief, but a grant appears to be impossible or impracticable, the court may still proceed with the case, adjudicate the rights and obligations of the parties, and award damages or a money judgment in lieu of the requested equitable remedy. They urge that a narrow reading of ERISA, including § 510 and the remedies available under § 502(a)(3), would be at odds with the purpose and public policy embodied in the statute.

That the *Mertens-Knudson* line of cases did not involve § 510 interference claims does not change this Court's conclusion. The Supreme Court analyzed the term "equitable relief" in § 502(a)(3) as it relates to the overall ERISA scheme. And, while the dissenting opinion in *Millsap* is persuasive, and arguably better reasoned than the majority, it holds no precedential value. Notably, the majority opinion in *Millsap* rejected the plaintiffs' request for compensatory damages representing back pay in reliance on *Knudson*.

Plaintiffs also argue that in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court affirmed the Eighth Circuit's decision in *Howe v. Varity Corp.*, 36 F.3d 746 (8th Cir. 1994), and in so doing, specified that the purpose of § 502(a)(3) is to provide appropriate equitable remedies where the statute could not otherwise afford relief.

In *Varity Corp.*, the employer combined several unprofitable divisions of a subsidiary into a new corporate entity, then persuaded the employees to transfer their

13

benefits to a plan offered by the new entity by deceiving them about the entity's financial viability and the security of their employee benefits; the employer knew the entity was insolvent from its inception.  The new entity went into receivership after two years resulting in the employees' loss of non-pension benefits.  The district court held that the employer acted as a fiduciary as plan administrator and violated fiduciary obligations under ERISA § 404, and the Eighth Circuit affirmed.  On appeal, the Supreme Court concluded that the factual context in which the statements were made, combined with the plan-related nature of the activity engaged in by those with plan-related authority to do so, provided sufficient support for the district court's legal conclusion.  The Court affirmed and held that § 502(a)(3) authorizes lawsuits for individualized equitable relief for breach of fiduciary obligations.

*Varity Corp.* did not address the issue of whether the monetary relief provided by the lower courts was equitable relief; the defendants stipulated that it was.  Its holding addressed whether the employees had a right to individual equitable relief to redress a fiduciary breach to them.  Plaintiffs do not allege that Visteon was insolvent at its inception or that Plaintiffs transferred benefits to the VMGRP because they were deceived about Visteon's financial viability, facts that would bring Plaintiffs' claim within the holding of *Varity*.  Accordingly, Plaintiffs do not establish that Visteon acted as a fiduciary during the complained of transactions.

Plaintiffs alternately sue Visteon as employers, plan administrators, plan sponsors and fiduciaries. Amend. Comp. at ¶ 5.  Plaintiffs ask for "[e]quitable restitutionary relief in the form of retirement benefits, service credits or monetary compensation necessary to make them whole." *Id*. at p. 17.  Plaintiffs assert that courts

14

are empowered by ERISA to fashion "appropriate equitable remedies," including
monetary awards.  Plaintiffs say the nature and extent of such remedies cannot be
determined without meaningful discovery.

Plaintiffs allege that prior to the spin-off, Ford negotiated the ETA with Visteon,
which at the time was its wholly owned subsidiary. Amend. Comp. at ¶ 27.  They say the
ETA limited, and in some instances entirely eliminated Ford's pension liability for certain
groups of employees. *Id.*  Plaintiffs also allege that Ford failed to disclose to these
employees the full scope of the limitation or elimination of its pension liability for Group
III employees achieved through the ETA; they say this amounted to collusive
negotiations between Ford and Visteon, its alter ego. *Id.* at ¶ 29.  Plaintiffs allege that
authorized agents of Ford and Visteon made oral and written assurances to Plaintiffs
and other Group III employees that following their transfer to Visteon, their wages,
salary, health care and pension entitlements would be "safeguarded" and their
retirement benefits under the VMGRP would comparable. *Id.* at ¶ 30.  They also allege
that Ford and Visteon, in an effort to limit the pension liabilities of both companies,
entered into the VSETA and agreed to classify returning salaried employees as "re-
hires" for pension eligibility purposes only. *Id.* at ¶ 34.

These allegations are insufficient to allege a breach of fiduciary duty.  The ETA
and VSETA were negotiated and executed to facilitate the spin-off and later re-
acquisition of Visteon.  This Court previously held that "[t]he ETA and VSETA clearly
constitute a modification and/or termination of Plaintiffs' benefit plans."  *Ensley v. Ford*,
2007 U.S. Dist. LEXIS 49538, 41 Employee Benefits Cas. (BNA) 1966 (E.D. Mich. July
10, 2007).  "[T]he act of amending a pension plan does not trigger ERISA's fiduciary

15

provisions. *Lockheed Corp. v. Spink*, 517 U.S. 882, 135 L.Ed.2d 153, 116 S. Ct. 1783

(1996).  Thus, Defendants' negotiation and execution of the agreements were not

fiduciary acts.

Like *Ensley*, the benefits which these Plaintiffs claim were negatively impacted by

the agreements, were non-vested, contingent retirement benefits.  Even if Visteon and

Ford were motivated, as Plaintiffs allege, to limit or eliminate Plaintiffs' future pension

benefits which had not yet accrued, it does not follow that their conduct was actionable.

See *Sutton v. Weirton Steel Division of National Steel Corporation,* 724 F.2d 406 (4th

Cir. 1983) (an employer's alleged interest in avoiding future severance pay obligations

are irrelevant since ERISA does not prohibit an employer from modifying ancillary,

contingent benefits).  To the extent Plaintiffs' claim is based upon Visteon's alleged

breach of fiduciary duty as fiduciary, sponsor or administrator of the VMGRP, Plaintiffs

fail to state a claim.

Similarly, to the extent Plaintiffs allege interference based on Visteon's role as an

employer, that claim also fails.  Plaintiffs allege that the negotiated rehire policy was an

integral part of the overall scheme to eliminate their benefits. Amend. Comp. at ¶¶ 42,

48, 50 .  This allegation is insufficient to establish an actionable claim of interference

under § 510.  ERISA's vesting rules only prohibit forfeiture of accrued benefits, which

does not include non-vested, contingent early retirement and severance benefits.

*Sutton*, 724 F.2d at 410.  An employee may only have a viable claim to protest a

unilateral amendment or termination of non-vested welfare benefits if his employment

contract required the employer to provide such benefits. *Id.*  Plaintiffs make no

allegation that their employment agreement required Visteon to provide benefits after

16

termination, and therefore, they fail to establish any entitlement to relief.

### i. Constructive Trust Restitution

Plaintiffs seek an order requiring Visteon to return to Ford and/or the GRP all money it wrongfully retained as "pension relief" representing future pension liabilities that should be returned and held in trust for the benefit of Plaintiffs and similarly situated Group 3 employees. Amend. Comp. at ¶ 8. Plaintiffs say there is a sufficient nexus between Visteon's interference under § 510 and Plaintiffs' request for monetary compensation, because the difference in the pension payments they will receive as beneficiaries of the FRP and the benefits they should have received is traceable to funds taken by Visteon as "pension relief." Plaintiffs cite *Pell v. E.I. DuPont de Nemours & Co.*, 539 F.3d 292, 309-10 (3rd Cir. 2008) in support of this contention.

Visteon says the money Plaintiffs seek is compensatory damages for benefits they did not earn, for a period in which they provided no Visteon service. Defendants says Plaintiffs will receive the VMGRP benefits accrued up to the time of their re-employment by Ford in 2006. Visteon says that *Pell*, citing *Eichorn v. AT&T Corp.*, 484 F.3d 644 (3rd Cir. 2007), makes clear that a plaintiff is barred from receiving an award in restitution where he seeks benefits that he was prevented from earning.

In *Eichorn*, the plaintiff employees sought benefits they would have received if they remained AT&T employees, and challenged a district court ruling denying their request as unavailable under § 502(a)(3). Like here, AT&T sold the division in which the employees worked, transferred them to the new employer, and as part of the sale, executed certain "employee matters" agreements; these agreements contained eight-month no hire provisions and effectively prevented the employees from exercising

17

bridging rights if they returned to work for AT&T or one of its divisions.  On appeal, the court agreed that the requested relief was akin to "back pay" which is not an equitable remedy within the meaning of the statute.

By contrast, in *Pell*, the retired plaintiff was entitled to injunctive relief and restitution because it consisted of benefits that his employer previously told him he earned, but later denied.  Because the plaintiff made out a claim for relief under an equitable estoppel theory, the district court erred in determining that he could not receive equitable restitution for past pension payments that were wrongfully withheld based on an incorrect service date.

This case resembles *Eichorn*.  Plaintiffs cannot establish that they are entitled to an order requiring Visteon to reinstate them to the VMGRP for all purposes and crediting them with service years after their transfer to Ford.  Plaintiffs seek pension benefits for work they never performed for Visteon; this is directly contrary to the plan. Moreover, contrary to Plaintiffs' assertion, their proposed method for calculating their damages is based upon their individual loss rather than Defendant's gain, i.e., the difference between benefits they will receive under VMGRP and/or FRP and those they would have received under the GRP, but for the re-hire classification. Therefore, it is in the nature of compensatory damages and unavailable under § 502(a)(3). See *Millsap*, 368 F.3d at 1253 (holding that back pay was not "appropriate equitable relief" because it measured the plaintiffs' loss rather than the defendants' gain).

Plaintiffs fail to establish entitlement to relief based on a constructive trust restitution theory.

18

## ii. Disgorgement of Profits

Plaintiffs say Visteon wrongfully retained millions of dollars worth of "pension relief" comprised of funds they would have earned under the VMGRP, but for Defendants' unlawful interference.  Plaintiffs contend that disgorgement or accounting for profits is a form of equitable restitution available under § 502(a)(3).  They say "profits" include any form of benefit derived by the wrongdoer as a result of its violation, including savings of money.  Citing *Parke v. First Reliance Standard Life Ins Co.*, 368 F.3d 999, 1008 (8th Cir. 2004), Plaintiffs argue that the remedy of accounting for profits contains no requirement that the plaintiff identify particular assets within the defendant's possession, because it proceeds on a different theoretical basis than a constructive trust theory.

Visteon counters that the only way in which a defendant's profits may be recovered is when the plaintiff would be entitled to a constructive trust on the particular property in the defendant's property that generated the profits.  Visteon says *Parke* and the other cases cited by Plaintiffs are inapposite because they involve breach of fiduciary claims, unlike here, and the profits or savings were recovered because a plaintiff's property produced them.  Visteon says there is no such identifiable property here because Plaintiffs do not seek already earned benefits.

In *Parke*, the employer appealed the district court's ruling that the employer was liable for prejudgment interest during the period in which the employer wrongfully delayed the employee's benefits.  On appeal, the question was whether the award of interest could be considered an accounting for profits, or whether it was a legal claim disguised in equitable terms.  The court concluded that even after *Knudson*, interest

19

was an appropriate measure of the profits made by a defendant who breaches its fiduciary duty to a beneficiary. *Parke*, 368 F.3d at 1009.  The fact that this equitable remedy produced the same damages that might be awarded in a breach of contract case at law was of no consequence. See *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994) (explaining that an accounting for profits of a fiduciary "if ordered would be ordered in a suit in equity, and the remedy thus would be equitable, while a suit seeking identical relief against a nonfiduciary would normally be a suit at law and the relief sough therefore legal").

Since Plaintiffs cannot establish a breach of fiduciary duty, it follows that they cannot establish a right to an equitable accounting.

For these reasons, Plaintiffs' claim for monetary compensation from Visteon is DISMISSED.

### 2.  Service Credits

For the same reasons, Visteon says Plaintiffs cannot seek an order awarding them service credits under the VMGRP or the benefits they would have received had they earned such credits by retaining their employment with Visteon.  Visteon says Plaintiffs are effectively asking the Court to reform the governing terms of VMGRP to provide pension credits or benefits to which they are not entitled.  Visteon says such contractual reformation is an improper remedy since there is no allegation that a contract was improperly reduced to writing and was intended to grant Plaintiffs credits for non-Visteon service or service never performed.

Plaintiffs don't specifically address the issue of service credits under the VMGRP, which also must fail.  As the Court in *Mertens* articulated, § 502(a)(3) does not authorize

20

"appropriate equitable relief" at large, but only "appropriate equitable relief" for the purpose of "redressing any violations or enforcing any provisions of ERISA or an ERISA plan. *Mertens*, 508 U.S. at 253.  There are no allegations that a term of the VMGRP was violated or that any term of the plan would be enforced by the requested judgment.

For the same reasons Plaintiffs are not entitled to monetary compensation, reformation is not "appropriate equitable relief" as permitted under § 502(a)(3) where Plaintiffs seek service credits which they have not earned.

Plaintiffs' claim for service credits from Visteon is DISMISSED.

### 3.  Catchall Relief

Visteon also says that Plaintiffs' generic request for an "order of equitable relief the Court deems necessary" does not save their ERISA claim from dismissal since it is nothing more than a request for compensatory damages.  The Court agrees.

Plaintiffs do not identify any other type of equitable relief to which they are entitled and the Court cannot discern any.  To the extent Plaintiffs seek other equitable relief from Visteon, that claim is DISMISSED.

### 4.  Declaratory Relief

Lastly, Visteon says Plaintiffs' request for a declaration that Visteon violated their rights under § 510 cannot save their claim.  Visteon says such a declaration would be a futile gesture in the absence of other tangible relief.  Additionally, Visteon says such a declaration is not an equitable form of relief available under  § 502(a)(3).

The Court agrees that Plaintiffs cannot establish entitlement to declaratory relief. The Complaint does not establish any violation of § 510 or the plan.  Moreover, Plaintiffs seek to be awarded the benefits and service credits they would have received had they

21

remained Visteon employees.  This type of relief, back pay in nature, is legal rather than

equitable, so it is unavailable under ERISA.  *Eichorn*, 484 F.3d at 656.  Plaintiffs'

request for declaratory relief is DISMISSED.

      **C.**    **Plaintiff Are Not Entitled to Relief for Interference with Benefits under the GRP**

          **1.  Service Credits**

Plaintiffs seek an order requiring Ford to credit their additional Ford service, from

January 2006 forward, for purposes of benefit accrual under the GRP.  Visteon says it is

not a proper defendant for purposes of this claim because it does not, and is not alleged

to, have any authority under Ford's plan.  Visteon says it is well established that a

person who does not have the power to provide plan benefits to a plaintiff is not a

proper defendant in a claim seeking such benefits.

Visteon's argument is consistent with the standard articulated by the Court of

Appeals for the Sixth Circuit in *Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir. 1988).  In

*Daniel*, the Sixth Circuit held that an employer is not a proper party defendant in an

ERISA action unless the plaintiff demonstrates the employer controlled administration of

the plan. *Id.* at 266.

Plaintiffs allege that Visteon was an instrumentality of Ford and was operated as

its alter-ego even after the spin-off. Amend. Comp. at ¶ 45.  But, there is no allegation in

the Complaint that Visteon is the sponsor or administrator of the GRP with the power to

provide Plaintiffs their requested relief.  As such, Plaintiffs have not met their burden of

alleging facts plausibly showing entitlement to relief from Visteon, and have failed to

state a claim.  Therefore, the Court need not address Visteon's alternative argument

that this claim against Visteon is not redressable and Plaintiffs lack standing to assert it because Visteon cannot provide Plaintiffs benefits in relation to the GRP.

To the extent Plaintiffs seek service credits under the GRP from Visteon, that claim is DISMISSED.

## 2.  Monetary Compensation

Visteon says Plaintiffs cannot seek monetary compensation from Visteon for alleged interference with GRP benefits for the same reasons that it cannot obtain such compensation under the VMGRP – the claim is essentially one for monetary damages not sustainable under § 502(a)(3).

Additionally, Visteon says Plaintiffs cannot seek payment of money from Visteon or the VMGRP to Ford or its GRP because Plaintiffs' demand for judgment does not seek this remedy.  While Visteon notes that the Introduction section of the Complaint references a request for an order requiring Visteon to return to Ford and/or the GRP all money it wrongfully retained as pension relief, it argues that Plaintiffs have not put Visteon on sufficient notice of what they request.

Visteon notes that Plaintiffs might be seeking Visteon's payment to Ford of the $49 million pension relief cost savings reported in two articles cited in the Complaint. Or, they might be seeking Visteon's return to Ford of funds that Ford transferred from the GRP to the VMGRP at the time of the spin-off in connection with the VMGRP's assumption of the pension liabilities associated with Group III employees.  In either case, Visteon argues that a claim for money damages under § 502(a)(3) must fail for the same reasons addressed above regarding the claim of interference under the VMGRP.

23

Visteon denies that there is any surplus in the VMGRP attributable to the assets transferred from Ford at the time of the spin-off.  But, even if there were, Visteon says *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438-41 (1999) established that participants have no right or interest in y surplus assets in a defined benefit pension plan.  Plus, it says a transfer of funds from the VMGRP to the GRP is unavailable because the VMGRP is not a party to this case.

In *Hughes*, the plaintiff employees challenged a judgment in favor of the employer in an action where they alleged that an amendment to the plan, which created a non-contributory benefit structure for new participants, violated ERISA because it depleted a plan surplus to fund the new structure.  The Ninth Circuit reversed and the employer sought review.  The Supreme Court ruled that since a decline in the value of a plan's assets does not alter accrued benefits, members have no entitlement to share in a plan's surplus, even if it is partially attributable to the investment growth of their contributions.  Since the employees did not allege that the employer ever withdrew accrued benefits or otherwise non-forfeiting interests from the pre-existing members, their vesting claim under § 203 was meritless.

Similarly here, Plaintiffs make no allegation that Visteon withdrew accrued benefits or otherwise non-forfeiting interests.  Plaintiffs allege only that following their transfer to Visteon, they received written and oral assurances that the retirement benefits available under the VMGRP would be available to them as Visteon retirees and would provide approximately the same level of pension benefits available to similarly situated Ford retirees under the GRP. Amend. Comp. at ¶ 30.  Despite the absence of any allegation that Visteon agreed to provide continued benefits under the GRP upon

24

termination, Plaintiffs claim a right to non-vested, contingent retirement benefits under the GRP.  They fail to establish they are entitled to this relief. *Sutton*, 724 F.2d at 410.

Plaintiffs' claim for monetary damages cannot be sustained under § 502(a)(3). To the extent Plaintiffs seek monetary damages under the GRP from Visteon, that claim is DISMISSED.

## V.    CONCLUSION

The Court **GRANTS** Visteon's Motion to Dismiss in its entirety.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  April 27, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on April 27, 2009.

s/Linda Vertriest
Deputy Clerk

25